| Minute Order Form (06/97) | | | | |
|---|---|---|---|---|
| **United States District Court, Northern District of Illinois** | | | | |
| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge If Other than Assigned Judge | | |
| **CASE NUMBER** | 01 C 9417 | **DATE** | 2/25/2004 | |
| **CASE TITLE** | Colangelo vs. Motion Picture Projectionists | | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, the Court hereby grants defendant's motion for summary judgment in its entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 2-26-04 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. Judge's staff distributed Memorandum Opinion. | | docketing deputy initials | 45 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JODY COLANGELO, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 01 C 9417<br>) |
| MOTION PICTURE PROJECTIONISTS,<br>OPERATORS & VIDEO TECHNICIANS,<br>LOCAL 110, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Motion Picture Projectionists, Operators & Video Technicians, Local 110's ("Local 110") motion for summary judgment. For the reasons stated below we grant the motion.

## BACKGROUND

Local 110 represents employees employed as projectionists in movie theaters and employees engaged in operating portable audio visual equipment at trade shows, conventions, and similar gatherings. Plaintiff Jody Colangelo ("Colangelo") worked for Local 110 from 1995 to June of 2000 as the Office Manager. Colangelo's supervisor was Steve Spano ("Spano"). Colangelo claims that beginning in 1999 Spano began making sexual advances to her on a regular basis. Colangelo also accuses Spano of making inappropriate comments about her

1

personal appearance. Local 110 claims that in 2000 Colangelo's work deteriorated and that she was rude, insubordinate, and spent too much time at work dealing with personal matters. Spano claims that he gave her several warnings regarding her poor work performance. According to Spano, in May of 2000 Colangelo refused to shift duties to another office worker. On June 6, 2003 Colangelo was suspended. Local 110 claims that during the meeting Colangelo stated that she would get revenge for the suspension. Colangelo claims that she was suspended to teach her a lesson and to show her who was in charge and that Colangelo had been performing her work satisfactorily. On the evening of the suspension Colangelo called Spano at home to complain about the suspension and he told her not to call him at home. Colangelo allegedly again called Spano at work regarding her suspension. On June 15, 2003 Spano allegedly told Colangelo to accept a severance agreement or she would be terminated. Colangelo is suing in part alleging that Local 110 discriminated against her because of her sex by not giving her job referrals. Local 110 contends that Colangelo never sought referrals from the union until her suspension at the very earliest and that she never sought a referral through the proper channels. Colangelo has brought the instant action alleging that Local 110 discriminated against her because of her sex and retaliated against her because she filed a charge of discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of

summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Colangelo alleges sexual harassment and retaliation claims against Local 110 in its capacity as her employer and in its capacity as her union.

I. Suit Against Local 110 In its Employer Capacity

Colangelo attempts to sue Local 110 in its capacity as her employer for sexual discrimination and retaliation in violation of Title VII. In her complaint Colangelo seeks to proceed against Local 110 in its capacity as her employer under 42 U.S.C. § 2000e-2(c) which deals with unlawful employment practices by a labor organization. However, the applicable section when dealing with an employee/employer relationship, whether the employer be union or any other entity is under 42 U.S.C. § 2000e-2(a). Therefore, we shall begin by analyzing Colangelo's claim under 42 U.S.C. § 2000e-2(a).

A. Unlawful Employment Practices by an Employer

Title VII provides:

(a) *Employer* practices
It shall be an unlawful employment practice for an *employer*--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin .
. . .

42 U.S.C. § 2000e-2(a)(emphasis added). In regards to retaliation Title VII also provides:

It shall be an unlawful employment practice for an *employer* to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a)(emphasis added). Under Title VII an "employer" is defined as:

4

> . . . a person engaged in an industry affecting commerce *who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year*, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers."

42 U.S.C. § 2000e(b)(emphasis added). Pursuant to Local Rule 56.1 Colangelo admits that Local 110 did not have the requisite number of employees in 1999 and 2000 to proceed under 42 U.S.C. § 2000e-2(a). ( R SF 8, 13, 15, 41, 42, 43 (improper denial)).

Although Colangelo indicates that she is proceeding solely under 42 U.S.C. § 2000e-2(c) in her complaint, she nonetheless has included an argument in her answer brief in favor of the applicability of 42 U.S.C. § 2000e-2(a). Colangelo argues that we should consider Local 110's officers and board members to be employees under Title VII which would give Local 110 more than the requisite number of employees necessary to be considered an employer under Title VII.

The Seventh Circuit rejected such an approach in *Chavero v. Local 241*. 787 F.2d 1154, 1156 (7th Cir. 1986). The court stated that "[w]hile courts generally construe the term 'employee' broadly under all provisions of Title VII . . ., members of boards of directors are not employees for purposes of Title VII coverage under any standards." 787 F.2d at 1156. In *Chavero*, the Seventh Circuit found that unless the individual board members of the executive board perform traditional employee duties "the individual board members are not employees for Title VII coverage". *Id.* at 1157.

Colangelo suggests this court apply an employee standard set forth recently by the Court

5

in *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003). However, this court notes that *Clackamas* did not involve a union and its board members, but rather involved a corporation and its director-shareholders. *Id.* at 1676. In addition, in *Clackamas*, the Court examined the definition of an "employee" pursuant to the Americans with Disabilities Act ("ADA") rather than in the context of Title VII. *Id.* Therefore *Clackamas* is not applicable in the instant case.

B. Unlawful Employment Practices by a Labor Organization

Colangelo also claims that she is entitled to sue Local 110 in its capacity as an employer under the labor organization provision in Title VII. Title VII provides:

> (c) Labor organization practices
>
> It shall be an unlawful employment practice for a labor organization--
>
> **(1)** to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
>
> **(2)** to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(3)** to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. 2000e-2(c). Title VII also states:

> The term "labor organization" means a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is

subordinate to a national or international labor organization.

42 U.S.C. § 2000e(d). Thus, Title VII includes a specific section making certain practices by labor organizations unlawful. 42 U.S.C. § 2000e-2(c). Unlike the definition of an employer the definition of a labor organization in 42 U.S.C. § 2000e(d) does not require a minimum number of employees or members. In order to circumvent the minimum number of employees requirement Colangelo maintains that she can sue Local 110 as her employer under, 42 U.S.C. § 2000e-2(c) which is the section dealing with labor organizations. It is true that 42 U.S.C. 2000e-2(c) states that a labor organization cannot "exclude or to expel from its membership, *or otherwise to discriminate* against, any individual" and that one could argue that the "or otherwise discriminate" covers a situation where a labor organization employs the individual and discriminates against the individual as her employer. However, such a conclusion would mean that a special standard applies for labor organization employers under 42 U.S.C. 2000e-2(c).

Colangelo's argument is without merit and defies a common sense reading of Title VII. Clearly congress intended 42 U.S.C. 2000e-2(a) which is defined as "employer practices" to deal with an employer/employee relationship. On the other hand 42 U.S.C. 2000e-2(c) entitled "labor organization practices" is intended to deal with the labor organization/union member relationship. There is no logical reason why a labor organization must be governed for all purposes under Section (c). Also, were we to read 42 U.S.C. 2000e-2 in the manner suggested by Colangelo, the result would be a special standard applied exclusively to situations where an employer is a labor organization. Colangelo has not provided any satisfactory reason for such a distinction. *See Chavero*, 787 F.2d at 1155 n.1(indicating that Title VII does not suggest that labor unions are to be treated any differently than other employers). There is no reason why

7

employees of a labor organization should get more or less protection under Title VII than employees of other employers. The special concerns relating to a labor organization are specifically addressed in 42 U.S.C. 2000e-2(c). See *Barbrocky v. Jewel Food Co.*, 773 F.2d 857, 868-69 (7th Cir. 1985)(stating when a union can be held liable under Title VII § 2000e-2(c) for discriminating against its members). Thus, we find that Colangelo cannot sue Local 110 in its capacity as her employer under 42 U.S.C. 2000e-2(c). *See Chavero*, 787 F.2d at 1155 n.1(explaining that where a plaintiff attempts to hold a union liable in its employer capacity the union must fall within the definition of an employer under Title VII). Therefore, we find that no reasonable trier of fact could conclude that Local 110 had the requisite number of employees to be deemed an employer under Title VII and Colangelo cannot sue Local 110 in its employer capacity under 42 U.S.C. 2000e-2(c) and we grant summary Judgment for Local 110 in regards to the discrimination claim against it in its capacity as Colangelo's employer. We also find that, since Local 110 is not deemed an employer under Title VII, Colangelo cannot proceed against Local 110 in its capacity as her employer under the anti-retaliation section of Title VII, 42 U.S.C. 2000e-3(a), and we grant summary judgment on that claim as well.

II. Suit Against Local 110 in its Capacity as Labor Organization

Colangelo alleges that Local 110, when dealing with her as her union in regards to referrals, discriminated against her after her termination because of her sex and retaliated against her because she filed a charge of discrimination.

A. Discrimination as a Labor Organization

A union is prohibited under Title VII from "engaging in discriminatory referral practices and from participating in discriminatory training programs." *See Barbrocky v. Jewel Food Company*, 773 F.2d 857, 868 (7th Cir. 1985)(citing § 2000e-2(c)). In order to establish a *prima facie* case in a Title VII claim against a union based on a breach of duty of fair representation a plaintiff is required to show: that (1) the employer violated the collective bargaining agreement with respect to the plaintiff, (2) the union did not address and contest the breach, thus breaching its own duty of fair representation, and (3) "there was some indication that the [u]nion's actions were motivated by discriminatory animus." *Id.* If a plaintiff is able to establish a *prima facie* case against the union, the union would have an opportunity to prove that its actions were not racially motivated and more than just pretextual. *Id.*

Local 110 argues that there is not sufficient evidence that Colangelo made a good faith effort to secure a referral from Local 110. Pursuant to Local Rule 56.1 Colangelo admits that she did not request a referral prior to her suspension meeting on June 6, 2000. (R SF 95). Colangelo maintains that she requested referrals on three occasions: 1) from Spano during the suspension meeting on June 6, 2000, 2) during her telephone call with Spano while she was suspended, 3) during her telephone conversation with Spano when she was terminated, and 4) when she filed her Equal Employment Opportunity Commission ("EEOC") charge of discrimination. (R SF 93, 95, 97). Colangelo admits pursuant to Local Rule 56.1 that "[a]t no time did she send anything in writing to the Union requesting work or job referrals." ( R SF 97). Colangelo claims that she requested a referral when she was suspended. However, she was not entitled to a referral during her paid suspension. Colangelo claims she called Spano at home and asked for a referral, but it

9

was inappropriate to contact Spano at home and he reasonably told her not to call her at home about work matters. In regards to her termination, Colangelo admits that during her conversation with Spano when she was terminated that she told Spano that she wanted to work and that he told her to talk to Mr. Virgil. (D Ex D. at 89). Colangelo does not offer any indication that she asked Mr. Virgil for a referral. (D. Ex D. at 89-93). Colangelo also admits that "in the past, in very limited circumstances, the Union's office workers had performed portable work, but that was rare." ( R SF 93). Colangelo contests Local 110's claim that since 1988 there was a long standing policy at Local 110 that office workers did not receive referrals. ( R SF 93). However, in support of her denial Colangelo can only point to one office worker that received a referral during the ten years that Colangelo worked at Local 110. ( R SF 93). Even if that were true, one exception would not negate the fact that a policy was otherwise generally followed. Colangelo admits that she did no more than request "work" and did not provide the union with her qualifications or indicate her interests. ( D Ex D. 82-89, 90-93, 130-31). In addition the affidavit of Steve Altman, a former Union Steward indicates that it was important for a Steward to know a member's qualifications and availability in order to consider a member for a referral. Therefore, no reasonable trier of fact could find that Local 110 unlawfully discriminated against her in its capacity as her union and we grant summary judgment on the discrimination claim against Local 110 in its capacity as her union.

B. Retaliation as a Labor Organization

Colangelo claims that Local 110 retaliated against her because she filed her EEOC complaint. In regards to unlawful retaliation in the context of a labor organization Title VII

10

provides:

> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, *or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.*

42 U.S.C.A. § 2000e-3(emphasis added). Colangelo has failed to offer sufficient evidence upon which a reasonable trier of fact could find that she was not receiving referrals because she filed an EEOC charge. The mere filing of an EEOC charge does not in and of itself prove retaliation if an employee or in this instance a union member does not get what she wants. Colangelo must point to sufficient evidence to support her theory of unlawful retaliation which she has not done. Therefore, we grant summary judgment on the retaliation claim against Local 110 in its capacity as the union of Colangelo.

## CONCLUSION

Based on the foregoing analysis we grant Local 110's motion for summary judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 25, 2004